The Honorable James C. Scott State Senator 321 State Highway 15 North Warren, Arkansas 71671-9707
Dear Senator Scott:
This is in response to your request for an opinion on the following facts:
 A city of the first class and a county have entered into an interlocal agreement whereby they operate an emergency services center which houses, among other things, a jail. The real estate where the emergency services center is located is owned jointly by the city and the county. In the interlocal agreement, the city and county have agreed that the city owns 65% of the building and the county owns 35% of the building. The same interlocal agreement designates that the city and the county will contribute specific percentages of the costs of operation of the emergency services center except for feeding and medical services for prisoners. The cost of food and medical services for county prisoners is to be paid by the county. The cost of food and medical services for city prisoners is to be paid by the city. In the interlocal agreement, the Chief of Police of the city is stated to have the authority and responsibility of being the administrator of the emergency services center. The agreement states that he will supervise the maintenance of the building, hire all personnel for the jail, including jailers, and have general oversight of the entire complex. The Chief of Police is stated to have jurisdiction over city prisoners, and the County Sheriff is stated to have jurisdiction over the county prisoners.
Your questions with regard to these facts are as follows:
 In such arrangement, under state law, does the County Sheriff have the ultimate authority and control over operation of the jail housed in this emergency services center? Does the County Sheriff have the ultimate authority and control over all prisoners housed in the jail located in this emergency services center?
Your questions necessarily inquire as to whether the interlocal cooperation agreement is consistent with the provisions of state law. The facts you recite about the contents of the agreement indicate that under the agreement, the sheriff does not have "ultimate authority and control over the operation of the jail housed in th[e] emergency services center," and he does not have "authority and control" under the agreement "over all prisoners housed in the jail. . . ." Under your description of the agreement, the Chief of Police has authority and control over the operation of the jail, and the sheriff appears to only have jurisdiction over county prisoners, and not "all" prisoners.
A question thus arises as to whether state law would require a different result than that set out in the agreement, and whether under Arkansas law, the sheriff should have ultimate control over the jail facility and all prisoners.
I should note as an initial matter that my records do not reflect that my office approved the contents of this interlocal cooperation agreement under the provisions of A.C.A. § 25-20-104(f). It may be that the agreement was entered into under the provisions of A.C.A. § 14-14-910, and was therefore reviewed by other legal counsel and not this office as is contemplated by that statute. See A.C.A. § 14-14-910(d). In any event, I cannot issue a legal opinion on the conformity of an interlocal agreement with state law without reference to the agreement itself. You have not enclosed the agreement for my review. In addition, I do not have any necessary additional facts as to the status of the facility, for example, as replacing the county jail, or whether this facility is supplemental to any such existing facility.
I will note, however, that the most relevant case of the Arkansas Supreme Court on your question appears to be Gravett v. Villines, 314 Ark. 320,862 S.W.2d 260 (1993). In Gravett, the Pulaski County Quorum Court enacted an ordinance that transferred the responsibility for the operation and maintenance of the Pulaski County Jail from the sheriff to a civilian administrator who would operate the jail under the authority of the county judge. The sheriff sued, contending that the ordinance caused a "revision" and "separation" of the office of sheriff and was enacted without voter approval at a general election in violation of Arkansas Constitution, Amendment 55, 2(b), which provides:
 The Quorum Court may create, consolidate, separate, revise, or abandon any elective county office or offices except during the term thereof; provided, however, that a majority of those voting on the question at a general election have approved said action.
The county claimed it had the power to reorganize its government under the provisions of A.C.A. §§ 14-14-701 and 702 and § 14-14-608. The Arkansas Supreme Court disagreed and noted that:
 Notwithstanding the power of Quorum Courts under Ark. Const. amend. 55, 2(b) and section 14-14-702(2), we have held that no county is authorized to pass an ordinance reorganizing its government in a manner contrary to the general law of the state. [Citations omitted.] The general law of the state provides `[t]he sheriff of each county in this state shall have the custody, rule, and charge of the jail within his county and all prisoners committed in his county, and he may appoint a jailer for whose conduct he shall be responsible.' Ark. Code Ann. 12-41-502.
* * *
 Notwithstanding the provisions of sections 14-14-702 and 12-50-101 et seq., which appear to give the Quorum Court authority to enact ordinances such as the one at issue, removal of this function constitutes a revision and separation of the office of sheriff under Ark. Const. amend. 55, 2 (b). As such, the removal of the running of the county jail from the office of sheriff can only be accomplished by a majority vote at the general election and then only at the conclusion of the term of office.
This case stands for the proposition that control and authority of the county jail cannot be transferred away from the sheriff without a vote of the people under Amendment 55. Counties and municipalities are authorized to enter into interlocal cooperation agreements to "perform any administrative service, activity, or undertaking which any contracting party is authorized by law to perform." A.C.A. § 14-14-910(a). See also
A.C.A. § 25-20-104(a). If the county is not authorized to pass an ordinance or perform an action singularly, it is not authorized to take that action in an interlocal cooperation agreement. See, e.g., Ops. Att'y Gen. 89-026 and 88-274.
A question thus arises as to whether the specific provisions of the interlocal agreement to which you refer are within the power of the county or city adopting it. Again, I cannot pass upon the conformity of an interlocal agreement with state law without reference to the agreement at issue and all the relevant facts. I suggest, however, that legal counsel for the county and city review the agreement with an eye toward its conformity with state law and determine whether any amendments are indicated.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh